**SHAPIRO, BERNSTEIN & CO., Inc., Appellant,**

v.

**4636 S. VERMONT AVE., INC., a California corporation doing business as Reed's Music Store, Appellee.**

No. 20368.

United States Court of Appeals
Ninth Circuit.

Sept. 29, 1966.

237

Bennett W. Priest, Henry C. Thumann, O'Melveny & Myers, Los Angeles, Cal., for appellant.

Robert D. Hornbaker, Mahoney, Halbert & Hornbaker, Los Angeles, Cal., for appellee.

Julian T. Abeles, Robert C. Osterberg, Abeles & Clark, New York City, for amicus curiae, Music Publishers' Protective Ass'n.

Before BARNES and DUNIWAY, Circuit Judges, and McNICHOLS, District Judge.

BARNES, Circuit Judge:

This is an appeal from a final judgment of the United States District Court

for the Southern District of California, Central Division, which found that defendant-appellee had infringed plaintiff-appellant's copyrights, but denied damages to plaintiff, denied an injunction to plaintiff, and awarded defendant its attorney fees.

The district court had jurisdiction pursuant to 28 U.S.C. § 1338(a). This court has jurisdiction pursuant to 17 U.S.C. § 114 and 28 U.S.C. § 1291.

There is no serious dispute concerning the facts of this case. Plaintiff-appellant Shapiro, Bernstein & Co., Inc. is the owner of copyrights on a large number of popular songs, and engages in the business of publishing and selling this copyrighted music. Defendant-appellee, 4636 So. Vermont Avenue, Inc., doing business as Reed's Music Store, is a small retail music store located in Los Angeles primarily engaged in the sale of pianos and organs with about one-half of one per cent of its total sales attributable to sales of printed musical compositions.

Some time in 1961 a man who gave his name as "Mel Alan" walked into the Reed Music Store and attempted to interest appellee's president in purchasing a collection of compositions entitled "Over 1,000 Favorite Standard Songs, Volume 1". The collection was what is known in the trade as a "fake book", and the musician "faked" the harmony when asked to play the song. Such volumes are used primarily by professional musicians who otherwise play the melody from memory and fake the harmony. The collection contained fifty-five popular songs on which the copyrights were owned by appellant. Mel Alan had no authority from appellant to reproduce or sell any of the copyrighted songs, and appellant chose to claim the reproduction and sale of a certain twelve of the fifty-five songs violated the federal copyright laws. Mel Alan has since been indicted and convicted of wilful copyright infringement, a crime under 17 U.S.C. § 104, and his probation subsequently revoked.

■ Appellee's records show that it purchased at least four copies of this infringing collection from Alan over a period of time, the first purchase being made in August 1961, another in December 1961, and two in May 1962. Although knowledge of lack of authorization is not required for a violation of the copyright law, appellee's president testified that he did not check the collection to see if there was a copyright notice or publisher named (which there was not), did not ask Alan if he had authority to publish and sell the songs, and merely "assumed" that Alan had authority.

On June 13, 1962 one of the copies of the illegal song collection was purchased from appellee by Mr. T. Tempesta. Mr. Tempesta was an investigator for the Music Publishers Protective Association, Inc., an organization composed of music publishers of which appellant is a member. After discovering the unauthorized presence of a number of its copyrighted songs in the collection, appellant brought this suit against appellee under 17 U.S.C. § 101, seeking an injunction, damages, and surrender of any infringing books still held by appellee. The trial was before the court sitting without a jury. The court found that the sale of the book to Tempesta on June 13, 1962 did constitute copyright infringement, but further found that appellant's damages were *de minimis* and rejected appellant's contention that 17 U.S.C. § 101 requires minimum damages of $250 per infringement. The district court then found that appellee was the "prevailing party" under Local Rule 15(c), and awarded appellee its attorneys fees. The court also denied the injunction and refused to order surrender of infringing copies still in the hands of appellee. This appeal followed.

I. Was the District Court Required to Apply the "in lieu" Provision of 17 U.S.C. § 101(b)?

The primary argument on this appeal centers around the interpretation to be placed on 17 U.S.C. § 101(b). That section provides:

"§ 101. *Infringement.*

If any person shall infringe the copyright in any work protected under

the copyright laws of the United States such person shall be liable:

\*   \*   \*   \*   \*   \*

(b) *Damages and profits; amount; other remedies.*

To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, \* \* \* and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. But the foregoing exceptions shall not deprive the copyright proprietor of any other remedy given him under this law, nor shall the limitation as to the amount of recovery apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him. \* \* \* "

It is appellant's position that the district court *must* award the copyright owner its actual damages resulting from the infringement as well as the profits of the infringer where these figures are ascertainable, but where the copyright owner either cannot or will not prove damages (even though the amount of profits is established) the district court has no choice but to award at least the minimum of $250 per infringement provided in the statute. In this case, appellant asserts, it was unable to prove its damages and therefore the district court was required to award at least $250 for each of the twelve infringements sued on, or a total of $3,000.

The district court disagreed with appellant's views. It first held that the profits of the infringer were ascertainable with certainty. It arrived at this conclusion by taking the price appellee had paid Alan for the book ($5.90) and subtracting it from the price at which appellee had sold the book to Tempesta ($25) for a gross profit of $19.10. Then, stating that appellant had failed to show that its twelve songs were any more profitable than the others in the collection, the court divided $19.10 by 1000 for a profit per song of .191 cents, and, after multiplying by twelve, attributed a profit of "22 plus cents from the sale of the twelve songs." (C.T. pp. 229–230.) Next, the district court found that the damage to appellant was ascertainable, in the following language:

"The amount of damage suffered by plaintiff due to the infringements is ascertainable. There is no evidence of any damage to the plaintiff. Indeed, it is difficult to see how the plaintiff could be damaged by the sale because plaintiff's own agent bought the Book, and thus prevented the circularization of the copyrighted material to the public." (Finding 17, C.T. p. 230.)

Based on these findings, the district court made conclusions of law which rejected appellant's legal contentions:

"CONCLUSIONS OF LAW

\*   \*   \*   \*   \*   \*

3. The amount plaintiff is entitled to recover as profits and damages is de minimis. Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622 (7th Cir. 1965).

4. If either profits or damages are ascertainable, the minimum provided for in the 'in lieu' provision need not be resorted to. Sheldon v. Metro-Goldwyn Corp., 309 U.S. 390 [60 S.Ct. 681, 84 L.Ed. 825] (1940).

5. The 'in lieu' provision is the equitable substitute for cases which presented impossibility of proof as to damages and profits. Douglas v. Cunningham, 294 U.S. 207 [55 S.Ct. 365, 79 L.Ed. 862] (1935). Where no such difficulty exists, and where, on the contrary, exact proof of profit has

been made and no other damages shown for the violaticn, there is no need to resort to the 'in lieu' provision.

6. It is a matter of judicial discretion as to whether or not it is more just that recovery be based upon proven profits of the defendant and damages to the plaintiff, or be within the statutory limits. F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 [73 S.Ct. 222, 97 L.Ed. 276] (1952)."

While we disagree with some minor points in the district court's findings and conclusions relating to the application of 17 U.S.C. § 101(b), and believe that others require qualification, we conclude that on the whole they represent a correct statement of the law and the facts.

First, we disagree with the trial judge's conclusion of law 4 that if either profits or damages are ascertainable, the minimum provided for in the "in lieu" provision need not be resorted to, citing Sheldon v. Metro-Goldwyn Corp., 309 U.S. 390, 60 S.Ct. 681 (1940). The Sheldon case did make reference to and relied upon a report of the House Committee on the Copyright Act (309 U.S. at 400, 60 S.Ct. 681), which said that where both profits and damages had been ascertained the court could award the greater amount but not both. But that statement was superseded by the majority opinion in F. W. Woolworth Co. v. Contemporary Arts, 344 U.S. 228, 234, 73 S.Ct. 222 (1952). This distinguished the Sheldon case specifically, holding that the only question before the court in Sheldon had been apportionment of profits from an infringing motion picture, and that the case did not stand for the proposition that where profits were established the "in lieu" provision did not come into play. Further support for the view that Sheldon does not stand for the point cited by the district court is the dissenting opinion in Woolworth which quotes the same provision from the House Committee report which was rejected in the majority opinion. We conclude that Sheldon is not authority for the rule stated in con-clusion of law 4, and that, since the opinion in Woolworth, Sheldon does not stand for the proposition that where both profits and damages can be ascertained the court should award the higher but not both and should decline to resort to the "in lieu" provision.

Second, while we can agree that the Woolworth case stands for the proposition stated in conclusion of law 6, it is important to emphasize that the judicial discretion to be employed in choosing between proven profits and damages on the one hand and the statutory limits on the other only comes into play when profits and damages have actually been proved, and unless they have, the court must apply the statutory standard. Westermann Co. v. Dispatch Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919); Jewell-LaSalle Realty Co. v. Buck, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931); Douglas v. Cunningham, 294 U.S. 207, 55 S.Ct. 365 (1935). We do not believe that the references in Woolworth, supra, to the court's discretion in any way conflict with the rule stated in these three older cases. The Woolworth case merely held that the trial court has discretion to choose between actual damages and profits on the one hand and statutory damages on the other where actual damages and profits have been proved. Where such damages and profits have not been proved the statutory limits must be applied and the trial court's only discretion lies in determining the amount (between a minimum of $250 and a maximum of $5,000) per infringement to be awarded.

With these legal principles in mind, we turn to the findings of fact to determine whether the district court was correct in finding that the amount of appellant's damages and the amount of appellee's profits were proved, so that resort to the statutory damage provisions did not become mandatory. The most suspect finding of fact in this regard is the one quoted, supra, to the effect that the amount of damage to plaintiff-appellant was ascertainable. On its face this finding seems incon-

sistent. It first states that the amount of damage is ascertainable and next states that there was no evidence of damage. Lack of evidence of damages and lack of damages is not the same thing. As we read the cases just cited the district court is required to apply the mandatory statutory damage provisions where there is no evidence of the amount of damages. If the district court really meant that there was no proof on the issue, he erred in failing to apply the statutory damage provisions.

It seems more likely, and we conclude, that the district court meant that while there was proof concerning damages, the proof actually showed that there were no damages as a result of the sale of one "fake book". At the outset in testing this finding we must determine whether the district court was correct in assuming that the case involved only the one "fake book" sale, or also included sales of the other copies purchased from Alan, as contended by appellant.

After examining the record we are of the opinion that only the sale of the one book to Tempesta was involved in this case. The complaint alleges infringement only through the one sale. During the course of the trial defendant-appellee repeatedly objected to the introduction of evidence relating to the sale of books other than the one book sold to Tempesta. These objections were sustained in most instances and the evidence excluded, without any indication from appellant that it considered the exclusion error and, hence, without preserving a claim of error by appellant on this point.

■ Turning then to the evidence introduced by appellant to prove damages we are of the opinion, after reviewing the record, that we cannot say that the trial court's finding (as we have interpreted it) that there was no damage was clearly erroneous within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure. The bases for our opinion are two: (1) The testimony regarding damages to appellant from the sale of this fake book, largely if not exclusively given by appellant's employee Mr. Hoag-

land, did not establish that any damages had been sustained and in fact tended to show the inherent improbability that there had been any damages as a result of the sale, and (2) evidence which the appellant claimed was available and could have been put into evidence to establish damages was never produced. Numerous questions of Mr. Hoagland were objected to on the ground that he had not been shown to be qualified to render an expert opinion in response to the question. His answers were excluded, but appellant never undertook the simple expedient of qualifying Mr. Hoagland as an expert in order to get the evidence in. Again, while testifying that information on decline in sales of sheet music was available in its office, appellant never attempted to produce such evidence in court. Having failed to produce evidence which was available, appellant cannot complain when the district court made its finding on the basis of the evidence of damages which appellant had produced. We cannot find that the court was clearly erroneous in determining that there had been no damage to appellant as a result of the sale of the single book.

■ The next finding of fact to be reviewed is the district court's determination that appellee's profits, even without deduction of overhead and similar expenses which appellee had the right to, but failed to prove, was only "22 plus cents" for the twelve copyrighted songs in the collection on which suit was brought. While we may agree that the trial judge's method of apportioning the profit among the 1,000 songs in the books was questionable in terms of accuracy, we are reluctant to overturn it in light of the failure of appellant to show that its twelve songs were any more valuable or conducive to sale of the book than were the other 988 songs in the book. By appellant's own admission that Tempesta bought the book only to check for copyright infringement (and therefore not because of his affinity for any particular songs in the collection) it would be impossible to show

that more profit resulted from the inclusion of appellant's twelve songs than from the inclusion of any of the others. We cannot hold that the district court's finding of the profits enjoyed by appellee as a result of the sale of appellant's songs was clearly erroneous.

■ Since we hold that these findings are not clearly erroneous, and since we can agree that the proven profits of 22 or 23 cents are *de minimis* (Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622, 627 (7th Cir. 1965)), we do not believe that the district court erred in declining to award statutory damages.

In this connection it should be observed that appellant has prosecuted this appeal based on the argument that damages were not susceptible of proof and that therefore the statutory damages became mandatory. This is not correct. Appellant primarily tried to prove damages, and only succeeded in proving that there had been none. But since we find that the district court's findings of damages *and profits* are not clearly erroneous, we hold that he was not required to apply the statutory damage provisions, although he could have under the teaching of Woolworth v. Contemporary Arts, supra. In light of the facts of this case and our reading of *Woolworth,* we do not believe that the court erred in electing to award actual damages and profits (which he found to be *de minimis*) rather than the statutory measure. We are aware that, in making this determination, we may conflict with the opinion of Nimmer as to what the law should be. Nimmer, Copyright § 154.11 (1966).

Having found that the finding of the district court that no damages were suffered by appellant as a result of the sale of one fake book was correct, we find it unnecessary to deal with the remainder of that finding which suggested that Tempesta was the agent of appellant and that a sale to him therefore prevented circularization of the book to the public.

## II.  Injunction.

17 U.S.C. § 101(a) provides:

"§ 101.  Infringement.

If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

(a) Injunction.—To an injunction restraining such infringement; * * *"

■ Appellant asserts that under § 101(a) the district court was required to grant a permanent injunction after he found appellee's sale infringed, despite his finding that there was no likelihood that appellee would again infringe. While it is true that some cases have granted injunctions under § 101(a) even though finding that further infringement was unlikely, the authority in this area does not support appellant's contention that such an injunction is required. Nimmer, Copyright § 157.2 states:

"[157.2]—*Permanent Injunctions*

Upon prevailing in a statutory copyright infringement action, the plaintiff may obtain, in addition to a monetary recovery, a permanent injunction restraining further infringement, pursuant to Sec. 101(a) of the Copyright Act. *Such injunctive relief ordinarily will not be granted when there is no probability or threat of continuing or additional infringements.* * * *"
(Emphasis added;  notes omitted.)

In support, Nimmer cites Sheldon v. Moredall Realty Corp., 95 F.2d 48 (2d Cir. 1938), and Wihtol v. Crow, 309 F.2d 777 (8th Cir. 1962), both of which support his statement. We conclude that under the facts of this case the district court committed no error in finding that appellee was not likely to infringe again, and did not abuse his discretion in refusing to award an injunction.

## III.  Costs and Attorney's Fees.

The district court concluded that even though infringement had been established, appellee was the prevailing party because appellant had not shown itself entitled to any recovery, had refused a

larger settlement before trial than what it was found to be entitled to after trial, and had prosecuted the suit in bad faith knowing that the Supreme Court decisions were against it. (Findings 26, 27; Conclusion 9.) The court then concluded that appellee was the "prevailing party" and entitled to its costs of suit under Local Rule 15(c), and to attorney's fees under 17 U.S.C. § 116.

After studying Local Rule 15(c)[1] we agree that appellee was the prevailing party only because of the provision that "If the defendant offers a judgment in a certain sum which is rejected by the plaintiff, and the case thereafter goes to trial with the resulting recovery of only the amount previously offered by the defendant, or less, then the defendant is the prevailing party." Here appellee had offered a settlement of $50 before trial, which was refused by appellant. Since appellant was found to be entitled to less, appellee became the prevailing party. Without that provision in Local Rule 15(c) appellant would have been the prevailing party because it established infringement by appellee and its right to recover damages (which were denied only because found to be *de minimis*).

We are unable to agree that appellant brought this suit in bad faith knowing the cases were against it and without belief in the merits of the claim. We find the decision in *Woolworth,* supra, and the other copyright cases, together with the commentary on them such as Nimmer, to be sufficiently susceptible to appellant's interpretation to preclude a conclusion that it proceeded in bad faith. Under these circumstances the cases cited

by the district court to support the award of attorney's fees are inapplicable.

The district court erred in awarding attorney's fees. The award of attorney's fees is reversed. The judgment otherwise is affirmed for the reasons hereinbefore set forth.

---

1. Local Rules, United States District Court for the Southern District of California, Rule 15(c):

    "(c) *Party Entitled to Costs*—

    The prevailing party need not recover his entire claim in order to recover costs. If each side recovers in part, ordinarily the party recovering the larger sum will be considered the prevailing party. The defendant is the prevailing party upon a dismissal or summary judgment or other termination of the case without judgment for the plaintiff on the merits. If the defendant offers a judgment in a certain sum which is rejected by the plaintiff, and the case thereafter, goes to trial with the resulting recovery of only the amount previously offered by the defendant, or less, then the defendant is the prevailing party. No costs shall be allowed to either party if the Court is unable to clearly determine the prevailing party."