MILENE MUSIC, INC., Blendingwell Music, Inc., MCA, Inc. and T.B. Harms Company, Plaintiffs,

v.

Elizabeth GOTAUCO, George Gotauco and M.A.P. Enterprises, Inc., Defendants.

JAZZBIRD MUSIC, W.B. Music Corp., Famous Music Corp., T.B. Harms Co., M.C.A. Inc. and Milene Music, Inc., Plaintiffs,

v.

M.A.P. ENTERPRISES, INC., Elizabeth Gotauco, and George Gotauco, Defendants.

Civ. A. Nos. 80–0636, 82–0032.

United States District Court, D. Rhode Island.

Nov. 24, 1982.

**1290**

Benjamin V. White, III, Vetter & White, Providence, R.I., for plaintiffs, Milene Music, Inc., Blendingwell Music, Inc., MCA, Inc., T.B. Harms Co., Jazzbird Music, W.B. Music Corp., Famous Music Corp. and M.C.A. Inc.

Paul J. DiMaio, Providence, R.I., for defendants, Elizabeth Gotauco, George Gotauco and M.A.P. Enterprises, Inc.

## OPINION

SELYA, District Judge.

### OVERTURE

These actions for monetary and injunctive relief based on alleged copyright infringement are before the Court on plaintiffs' motions for summary judgment and defendants' objections thereto. The cases were consolidated by order dated July 8, 1982 for the purpose of facilitating pre-trial discovery and consideration of these motions.[1] The motions, and the opposition thereto, have been fully briefed by the parties. Oral arguments were scheduled to be heard by the Court on November 10, 1982, at which time counsel for all parties elected to waive the same and to rest upon their respective briefs. Jurisdiction is based on 28 U.S.C. § 1338(a).

After examining the record, it appears that the score of this juridical libretto possesses a distinctive musicological tonality, which the Court will endeavor to capture and to summarize.

### FIRST MOVEMENT

Each of the plaintiffs is a music publisher, and each is a member of the American Society of Composers, Authors, and Publishers (hereinafter "ASCAP"). The plaintiffs, through ASCAP, license copyrighted material to individuals and businesses wishing to perform the material in public, or to sponsor such performances.

The corporate defendant (hereinafter "M.A.P.") is the owner and operator of a

---

1. The party-defendants in each suit are identical, the party-plaintiffs are partially identical (although Blendingwell is only a plaintiff in C.A. No. 80–0636 and Jazzbird Music and W.B. Music are plaintiffs only in C.A. No. 82–0032); all parties-plaintiff are affiliated with ASCAP; each party-plaintiff is similarly situated vis-a-vis the defendants; and the issues of fact and of law are, for the most part, common to both actions.

popular local "watering hole"[2] which is located in Exeter, Rhode Island, offering food, drink, and live nocturnal entertainment to its patrons. Each of the individual defendants are shareholders and-or officers of M.A.P., and collectively manage its affairs.[3]

Until April 1, 1976, M.A.P. held a valid license from ASCAP permitting public performances of plaintiffs' compositions at the Covered Wagon. On or about April 1, 1976, this license was revoked for failure to pay license fees (amounting to $870.00) theretofore accrued. On numerous occasions thereafter, representatives of ASCAP offered to reinstate the license if the previously accrued fees owed by M.A.P. were paid. Defendants repeatedly rebuffed these requests for payment.[4] On September 27, 1980 and again in early August of 1981, agents of ASCAP patronized the Covered Wagon, apparently as part of a surreptitious (but entirely legal) undercover investigation. During the visit of September 27, it was noted that the following compositions were performed by a band: "Blue Eyes Crying In The Rain", "Bad, Bad Leroy Brown", and "Tulsa Time". On the visit of August 1–2, 1981, the agents noted that live renditions were given of the following songs: "Peaceful Easy Feeling", "Me and You and a Dog Named Boo", "Tulsa Time", "Orange Blossom Special", and "Blue Eyes Crying In The Rain". At all times relevant hereto, plaintiffs (collectively) are and have been the proprietors of the copyrights for each and all of the works in question.[5]

2. The Court intends no disrespect by the use of vernacular; the phrase, however, seems tailor-made, and is utilized for its superior descriptive prowess.

3. George Gotauco was sole shareholder and an officer of defendant M.A.P. at all relevant times. Deposition of George Gotauco, at 5–6.

Elizabeth Gotauco was an officer of defendant M.A.P. at all such times. *Id.* at 5.

4. From and after September 1, 1981, M.A.P. has apparently been paying license fees on a current basis as they come due.

5. According to defendants' failure to respond to requests for admissions, facts shown in the following table, consolidated and adapted from the complaints, are not in dispute:

| Plaintiff | Musical Composition | Writers | Date of Publication | Certificate of Registration Number | Renewal |
|---|---|---|---|---|---|
| Jazz Bird Music and WB Music Corp. | "Peaceful Easy Feeling" | Jack Tempchin | 1/12/73 Registered 1/27/72 | EP 308639 As Unpublished EU 310025 | |
| Famous Music Corp. | "Me and You And A Dog Named Boo" | LOBO (A/K/A Kent La Voie) | 5/3/71 | EP 285726 | |
| T. B. Harms Company | "Tulsa Time" | Danny Flowers | 9/5/78 | PA 18–894 | |
| MCA, Inc. | "Orange Blossom Special" | Ervin Thomas Rouse | 5/2/47 Registered 10/20/38 | EP 14180 As unpublished EU 179156 | Ervin Thomas Rouse as "Author". Renewal date and number: 2/5/75 R 597639 3/4/66 R 381610 |

## SECOND MOVEMENT

The Copyright Act, 17 U.S.C. § 100 *et seq.* (hereinafter the "Act"), as recodified in 1976, provides in substance that any person who violates the exclusive rights of the copyright owner is an infringer of the copyright. 17 U.S.C. § 501(a). § 106 of the Act gives the owner of a copyrighted musical composition the exclusive right both to perform the work publicly and to authorize the public performance of the work. This framework enables the owner of the copyright to assign the licensing of public performances to others, such as ASCAP, on terms amenable to the copyright owner. *George Simon, Inc. v. Spatz*, 492 F.Supp. 836, 838 (W.D.Wis.1980); 1 M. Nimmer, *Nimmer on Copyright* § 8.11, at 8–115 (1982). It appears of record that ASCAP, in the case at bar, served as the intermediary for all plaintiffs in this regard.

■ To establish copyright infringement, the plaintiffs must establish the following elements: (i) the creation and originality of the compositions involved; (ii) compliance with all formalities required to secure a copyright under the Act; (iii) plaintiffs' proprietary right in and to the copyrights at issue; (iv) public performance of the songs for profit at the Covered Wagon; and (v) that the defendants had not received permission from the plaintiffs or their representatives for such performances. *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 912 (D.Conn.1980); *Shapiro, Bernstein & Co. v. "The Log Cabin Club Association"*, 365 F.Supp. 325, 328 n. 4 (N.D.W.Va.1973); *accord George Simon, Inc. v. Spatz, supra*, at 838; *Chess Music, Inc. v. Tadych*, 467 F.Supp. 819, 821 (E.D.Wis.1979).

■ Since this matter comes before the Court on plaintiffs' motion for summary judgment, the burden is on the plaintiffs to establish that no genuine issue of material fact exists and that plaintiffs are entitled to judgment as a matter of law. *Mack v. Cape Elizabeth School Board*, 553 F.2d 720, 722 (1st Cir.1977); *See Over The Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816, 819–20 (1st Cir.1980). If plaintiffs do so, and if the defendants cannot rebut this showing by establishing the existence of a genuine issue of material fact, or a divergent legal result, the plaintiffs are entitled to judgment as a matter of law. *Over The Road Drivers, Inc. v. Transport Insurance Co., supra*, 637 F.2d at 818. This Court is mindful of the graphic and sagacious observation of the illustrious now-incumbent Chief Judge of this Circuit to the effect that "[S]ummary judgment is a judicial device available only when the effluent stream of controversy has been purified by the exclusion of any genuine issues of material fact...". *General Electric Co. v. United States Dynamics, Inc.*, 403 F.2d 933, 934 (1st Cir.1968). It is with this standard as a guide that the Court now proceeds to apply the respirometer of judicial scrutiny to the instant motions and to the underlying pleadings and evidentiary accouterments. By affidavits of ASCAP agents, and by adroit use of Rule 36, Fed.R.Civ.P., the plaintiffs have confronted each element of their case. By failing to answer, object or otherwise respond to the requests for admissions promulgated under Rule 36, the defendants are, for purposes of this litigation, deemed to have admitted the facts and statements limned by the requests. *Luick v. Graybar Electric Co.*, 473 F.2d 1360, 1362

| Milene Music, Inc. | "Blue Eyes Crying In The Rain" | Fred Rose | 11/9/45 | EP 136765 | Lester F Rose & Wesley H. Rose, each as "Child of Deceased Author, Fred Rose", Renewal date and number: 11/29/72 R 540614 |
| Blendingwell Music, Inc. and MCA, Inc. | "Bad, Bad Leroy Brown" | James Croce | 5/16/73 Registered 6/12/72 | EP 313304 As Unpublished EU 337197 | |

(8th Cir.1973); *Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966).

We turn, thus, to the uncontroverted affidavits and to the admissions of record to ascertain whether or not plaintiffs have thereby sustained their Rule 56 burden, that is to say, whether this particular effluent stream has been sufficiently purged.

▮ The Court notes, first, that defendants are deemed to have admitted that each of the plaintiffs is, and has been at all times material hereto, the owner/proprietor of the copyright(s) attributed to it in the table set forth in footnote 5, *supra.* See Requests for Admissions numbered 1 through 6, inclusive (filed May 11, 1982) in C.A. No. 82–0032; Requests for Admissions numbered 1 thru 3 in C.A. No. 80–0636. No questions arise of record as to the validity of any of such copyrights or as to compliance with statutory formalities for registration. Once validity and compliance are established, then the Court can infer that the compositions are original and were penned by the authors set out in footnote 5, *supra.* *Cf. Broadcast Music, Inc. v. Moor Law, Inc.,* 484 F.Supp. 357, 362 (D.Del.1980), holding to the effect that valid registrations are prima facie evidence of originality and authorship; *accord Remick Music Corp. v. Interstate Hotel Co.,* 58 F.Supp. 523, 531 (D.Neb.1944), *aff'd,* 157 F.2d 744 (8th Cir. 1946), *cert. denied,* 329 U.S. 809 (1947). The admission by defendants that the plaintiffs are proprietors of valid copyrights, together with the itemization of exact copyright registration numbers in the complaints,[6] attests to compliance with statutory registration.[7] *See Remick Music Corp. v. Interstate Hotel Co., supra,* 58 F.Supp. at 531. The affidavit of B. Robert Gendreau, ASCAP's district manager, attests that all 6 of the songs which in the aggregate are the subject matter of these consolidated actions "... were in ASCAP's repertory on the dates of infringement." Gendreau Affidavit, ¶ 6. The first three elements of the plaintiffs' claims are thus assembled.

The uncontroverted affidavits verify the public performance of the copyrighted compositions. Two agents of ASCAP, Robert Pickett and Anne Kelly, attended a band performance at the Covered Wagon on September 27, 1980. Pickett's affidavit, contemporaneous notes and inspection reports, so-called, adequately evince that the following songs were performed that evening at the Covered Wagon as part of the scheduled for-profit entertainment: "Blue Eyes Crying In The Rain", "Bad, Bad Leroy Brown", and "Tulsa Time".

On August 1–2, 1981, Pickett and another agent of ASCAP, one Paul McDonald, revisited the Covered Wagon. On those evenings, virtually all of the copyrighted ballads (excepting only "Bad Bad Leroy Brown") were performed. The same documentation makes it abundantly clear that the Covered Wagon was open to the general public on these occasions, and that paying patrons from the general populace were in attendance. These assertions are further corroborated by the defendants' admissions, i.e., the fruits of defendants' aforementioned failure to deny or otherwise answer the Rule 36 requests for admissions. The defendants admit thereby that the compositions were rendered to the public and that the defendants have no knowledge or information to the contrary. The uncontroverted affidavits and requests for admissions establish that the songs were commercially performed in public; it follows inexorably that the fourth element of copyright infringement is thereby established.

**6.** The generic references in this Opinion to "complaints" encompasses the second amended complaint (filed March 9, 1982) in the earlier action, and the original complaint in the later action.

**7.** It might have been more elegant, and would surely have been better practice, for the plaintiffs to have presented verified copies of the registration certificates themselves, so as to eliminate the need for any inference. Compliance with statutory registration is important inasmuch as it is a prerequisite to filing an action for infringement. 17 U.S.C. § 411(a). Nonetheless, this is of little moment in these cases, as the necessary inference is so compelling as to establish the fact sufficiently for purposes of the instant motions.

The final element of infringement, lack of permission, is verified by Gendreau's affidavit. Without a license from ASCAP or any other hint in the record of permission from plaintiffs, the defendants had no legal right to authorize, permit, or condone performances of the copyrighted compositions. *See Broadcast Music, Inc. v. Moor-Law, Inc., supra,* 484 F.Supp. at 363.

Creative genius [8] may be expressed in myriad ways. The fruits of a composer's artistic efforts may seem different, in a sense, than the edifice conceived by the architect or the device which springs full-blown from the mind and hand of the inventor (and thenceforth, for a time at least, revolutionizes an industrial process). Yet the composer, too, has a property right in what he or she has conceived; and given proper and timely resort to the prophylaxsis of the Act, is entitled exclusively, for the duration of the protected period, to the commercial benefits of his or her creative juices. Music, for all of its aesthetic, sociological, and cultural significance, is not an outcast from the reach of the law or from the ordinary rules of the marketplace.

On the present record there is no conflicting evidence. The elements of infringement have been authoritatively established by affidavit and admission. Defendants have failed to set forth, by any of the varied means allowed under Rule 56, Fed.R. Civ.P., any evidence to the contrary.[9]

The proof adduced by the plaintiffs stands starkly uncontradicted on the record.

■ The defendants try to sing a different tune, but the chords are dissonant. They advance arguments to the effect that the affidavits submitted on plaintiffs' behalf should not be considered because the affiants are ASCAP employees (and therefore, presumably, biased) and because summary judgment deprives the defendants of what they might garner on cross-examination of these individuals. There contentions are so off-key as to be frivolous in nature.[10] They warrant scant comment. Suffice it to say that defendants, as mentioned above, have not furnished any counter-affidavits, nor otherwise impugned nor cast a scintilla of reasonable doubt upon the veracity and/or contents of the affidavits. It is well settled that investigators' affidavits can indeed constitute sufficient proof of live public performance and like issues in copyright cases involving musical compositions. *See, e.g., Shapiro, Bernstein & Co. v. "The Log Cabin Club Association", supra,* 365 F.Supp. at 327.

■ Although courts are not disposed to grant summary judgment in copyright cases, *see, e.g., Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Data Cash Systems, Inc. v. JS & A Group, Inc.,* 480 F.Supp. 1063, 1066 (N.D.Ill.1979), *aff'd,* 628 F.2d 1038 (7th

---

**8.** By use of this euphemism, the Court does not intend to imply any finding as to the presence or absence of superlative artistic worth anent any of the musical compositions here *sub judice*. Genius, like beauty, is frequently in the eye—or, in the case of music, ear—of the beholder/listener. While the Court has little doubt but that the stature of George M. Cohan, Oscar Hammerstein, Lorenz Hart, Frank Loesser, and others similarly gifted is not likely to be threatened by "Me and You and a Dog Named Boo", that sort of judgment is best left to the tender mercies of the music critics and those possessing credentials admittedly superior to the Court's in the area of lyrical expertise. The central issue in this litigation is not musical merit, but proprietary rights.

**9.** It should also be noted that, while defendants objected to the motions for summary disposition, they did not deign to file any "statement

of disputed facts" as required by Local Rule 12.1(a)(2) of this Court. This oversight alone undercuts the objections, and would permit the granting of the motions presently at bar. The Court, however, feels that the interests of justice are best served by a consideration of the motions on the merits; and concludes that the absence of the required statement is mute testimony to the accuracy of the conclusion reached on other grounds by the Court, to wit, that no material facts are genuinely in dispute.

**10.** The record is barren of any effort on the part of the defendants, during the pendency of these actions, to exercise their vaunted rights of cross-examination by deposition(s) of any of the ASCAP personnel. *And see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–290, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968).

Cir.1980), that remedy remains available when there is a record which negatives the existence of any bona-fide dispute as to material facts. *Musto v. Meyer*, 434 F.Supp. 32, 36 (S.D.N.Y.1977), *aff'd mem.*, 598 F.2d 609 (2d Cir.1979); *Shapiro, Bernstein & Co. v. "The Log Cabin Club Association", supra*, 365 F.Supp. at 328. This is such a case. Accordingly, the Court finds that the defendant, M.A.P., infringed on the plaintiffs' copyrights on the dates and in the manner set forth in the pleadings, and that summary judgment should be granted against it.

### THIRD MOVEMENT

■ With infringement proven as against M.A.P., the Court must now consider the liability of the individual defendants. A person may be liable for copyright infringement even though that individual did not perform the composition. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161–62 (2d Cir.1971). Thus, the Act provides for vicarious liability in an infringement action. *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963); *Boz Scaggs Music v. KND Corp., supra*, 491 F.Supp. at 913. This vicarious liability extends to corporate officers. *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc.*, 554 F.2d 1213, 1215 (1st Cir.1977). The officers are liable even if they had no knowledge of the infringement by other persons or entities. *Shapiro, Bernstein & Co. v. H.L. Green Co., supra*, 316 F.2d at 309.

■ On the instant record, it cannot be gainsaid that the individual defendants are and have been the managing agents of M.A.P., governed and controlled its infringing conduct, and were aware of ASCAP's request for license fees and of the rights of the plaintiffs. Based on the relevant authorities, these defendants cannot for purposes of the Act evade responsibility by hiding behind the corporate skirts of M.A.P. Thus, the Court finds that the individual and corporate defendants should be held jointly and severally liable for any damages accruing to the plaintiffs, and that summary judgment is proper as to all defendants.

### FOURTH MOVEMENT

The plaintiffs, having prevailed on their motions for summary judgment in the consolidated actions, seek injunctive relief, monetary damages, costs, and attorney's fees. The prayers for relief will be dealt with *seriatim*.

■ The Act sanctions and allows the granting of injunctive relief to the prevailing parties. 17 U.S.C. § 502(a). An injunction against the defendants will issue when a substantial likelihood of further infringement of plaintiffs' copyrights exists. *George Simon, Inc. v. Spatz, supra*, 492 F.Supp. at 838; 3 M. Nimmer, *op. cit. supra*, § 14.06[B], at 14–53; *cf. Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*, 367 F.2d 236, 242 (9th Cir.1966).

The defendants are apparently presently in compliance with ASCAP's requirements and are now paying license fees which enable defendants to hire bands for the public performance of plaintiffs' copyrighted compositions. See footnote 4, *supra*.

■ The history of defendants' actions, however, as chronicled in the pleadings, exhibits an unfortunate tendency conveniently to ignore, from time to time, both ASCAP and the plaintiffs' proprietary rights. As the Court has hitherto noted, these rights are proprietary in nature, and are deserving of protection. To guard against future encroachment, the Court will permanently restrain and enjoin defendants, and all persons acting under the direction, control, permission or authority of defendants, from publicly performing the aforementioned compositions or any of them, and from causing or permitting the said compositions to be publicly performed at the Covered Wagon, or in any place owned, controlled or conducted by defendants, and from aiding or abetting the public performance of such compositions in any such place

or otherwise, directly or indirectly, in violation of the Act.[11]

Since a copyright is or can be a valuable economic right, infringement of that right reduces the economic gain accruing to the owner(s) of the copyright. The Act recognizes this concept, and permits the prevailing party to seek actual damages such as lost revenue and-or profits illicitly gained by the defendants. 17 U.S.C. § 504(b). In the alternative, especially when such damages are difficult to compute, the Act permits the prevailing party to seek statutory damages ranging from $250/infringing act to $10,000/infringing act. 17 U.S.C. § 504(c)(1); *see Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 489 F.Supp. 174, 180 (N.D.Ga.1980). The plaintiffs in the instant actions have prayed for § 504(c)(1) relief, but have also offered proof by affidavit of actual damages. In terms of the statutory prayer, plaintiffs have urged the Court to award $500 per infringement for the infringements of September 27, 1980 and $1,000 per infringement for the infringements of August 1–2, 1981.

The Court believes that the § 504(c)(1) approach will, in the circumstances of this litigation, best do justice among the parties.

■ The amount of statutory damages is left to the discretion of the Court within the minimum and maximum amounts fixed by the statute. *See Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579, 582 (D.D.C.1981). In awarding statutory damages, the Court deems it meet to consider the following factors: (i) expenses saved and profits reaped by defendants in connection with the infringement; (ii) revenues lost by the plaintiffs; and (iii) whether the infringement was willful and knowing, or whether it was accidental and innocent. *Boz Scaggs Music v. KND Corp., supra,* 491 F.Supp. at 914; 3 M. Nimmer, *op. cit. supra,* § 14.04[B], at 14–23, n. 8. In weighing these factors, most courts that have pondered the issue do not attach great weight to profits gained or to income lost, because these amounts are difficult to monetize, and may be marginal at best. *See George Simon, Inc. v. Spatz, supra,* at 838; *Boz Scaggs Music v. KND Corp., supra,* at 914. Courts thus have focused largely on the element of intent, and the per-infringement award tends understandably to escalate, in direct proportion to the blameworthiness of the infringing conduct. *George Simon, Inc. v. Spatz, supra,* at 838; *Boz Scaggs Music v. KND Corp., supra,* at 914.

■ The evidence in the cases at bar makes manifest that the defendants have avoided paying over $3,000 in license fees,[12] of which an indeterminate portion is allocable to the copyrighted compositions.[13] The record establishes beyond peradventure of doubt that the defendants intentionally and with foreknowledge violated plaintiffs' copyrights. The conduct of the defendants is all the more egregious since they were familiar with ASCAP's role in the licensing process, and in fact paid fees to ASCAP (as the representative of various proprietors of copyrighted material) for some time prior to embarking on a course of deliberate non-payment of license fees. That stratagem led to license revocation, as discussed above, in April of 1976. Yet defendants, seemingly undeterred by lack of licensure and-or permission, proceeded boldly to appropriate protected compositions to their own use.

While blameworthiness is great, however, the economic attributes of the matter ap-

11. Poetic justice suggests that the Court admonish these defendants henceforth to observe the oft-repeated lyric refrain from "Tulsa Time": "I was born to just walk the line". The injunction ordered herein should aid in accomplishing this salutary objective.

12. Neither complaint contains a prayer in assumpsit for unpaid license fees accrued through the date of ASCAP's initial revocation of the license covenant (circa April 1, 1976). Thus, no award is made to the plaintiffs in this regard.

13. It would be useful in future cases for the plaintiffs to show the amount of fees attributable solely to each of the copyrights in question, if only as guide for the Court.

pear to be relatively modest. This must, of necessity, temper the award somewhat. Further, the defendants did, apparently, recognize the error of their ways some 14 months ago, and resumed their license arrangement with ASCAP in September of 1981. This, too, deserves consideration. Taking all of these elements into account, the Court concludes that an award of $625 for each of the infringing acts is just and equitable.[14]

In addition to compensation for deprivation of an economic right, the plaintiffs also seek costs. Whereas prior to 1976, the district court was required to award costs to the prevailing party in a copyright infringement suit, the 1976 Act makes the award of costs indiscretionary with the Court. 17 U.S.C. § 505 (1976). In virtually all of the reported cases under the Act, costs have been awarded to the victor without discussion. *See, e.g., George Simon, Inc. v. Spatz, supra,* at 838; *Chess Music, Inc. v. Tadych, supra,* 467 F.Supp. at 821. Given the course of conduct which these defendants so cavalierly pursued in the premises, there is no reason for the Court to make any exception to this practice. Costs are therefore awarded to the plaintiffs.

Finally, plaintiffs seek counsel fees. The Court is permitted to award attorneys' fees to the prevailing party in an infringement action. 17 U.S.C. § 505. Again, it is left to the sound discretion of the Court to determine whether or not counsel fees should be granted, and if so, the amount thereof. *See Quinto v. Legal Times of Washington, Inc., supra,* 511 F.Supp. at 581. Many courts have abstained from ordering payment of attorneys' fees unless a significant element of blameworthiness existed. *See, e.g. Lauratex Textile Corp. v. Allton Knitting Mills,* 517 F.Supp. 900, 904 (S.D.N.Y.1981), a case of deliberate infringement; and *see Quinto v. Legal Times of Washington, Inc., supra,* at 582 where the district court awarded counsel fees when, in its considered judgment, no reasonable grounds existed for defendant's position.

The cases at bar comprise prime candidates for the imposition of attorneys' fees, for the reasons previously discussed. The defendants have deliberately and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce their proprietary interests in the copyrights. The defendants, in the Court's view, have come forward with no justification for their actions, nor any colorable grounds whatever upon which defense or mitigation could be predicated. The Court believes that this

14. Damages are calculated by multiplying the damage award by the number of times each copyrighted work is infringed upon. Thus, damages are assessed as follows:

| Plaintiff | Musical Composition | Date of Infringing Act | Award |
|---|---|---|---|
| Jazz Bird Music and WB Music Corp. | "Peaceful Easy Feeling" | 8/1–2/81 | $625 |
| Famous Music Corp. | "Me And You And A Dog Named Boo" | 8/1–2/81 | $625 |
| T. B. Harms Company | "Tulsa Time" | 8/1–2/81 | $625 |
| T. B. Harms Company | "Tulsa Time" | 9/27/80 | $625 |
| MCA, Inc. | "Orange Blossom Special" | 8/1–2/81 | $625 |
| Milene Music, Inc. | "Blue Eyes Crying In The Rain" | 8/1–2/81 | $625 |
| Milene Music, Inc. | "Blue Eyes Crying In The Rain" | 9/27/80 | $625 |
| Blendingwell Music, Inc. and MCA, Inc. | "Bad, Bad Leroy Brown" | 9/27/80 | $625 |

No prejudgment interest shall inhere.

litigation fairly cries out for an award of attorneys' fees. *Compare Russell v. Price,* 612 F.2d 1123, 1132 n. 25 (9th Cir.1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980).

■■ In determining the amount of the award, the Court must consider the following factors: (i) whether the plaintiffs' counsel had the benefit of a prior judgment or decree in a case brought by the government; (ii) standing of both parties' counsel at the bar; (iii) the time and labor spent on the case; (iv) the magnitude and complexity of the case; (v) the responsibility undertaken; (vi) the amount recovered; (vii) the work done and the time expended by the prevailing party's attorneys, and the reasonableness of the time so spent; and (viii) what counsel would likely charge as a reasonable fee to the prevailing litigants. *Moorish Vanguard Concert v. Brown,* 498 F.Supp. 830, 831 (E.D.Pa.1980). The Court has weighed these factors. Plaintiffs' have requested fees totalling $2,250, and have filed an affidavit of counsel in support thereof. The Court believes, and finds, that the amount requested is eminently fair, and has little hesitancy in awarding counsel fees in this amount.

### THE CRESCENDO AND CURTAIN CALL

Counsel for the plaintiffs shall prepare and present for entry by the Court an order for judgment consonant with the findings and determinations herein contained.