**RARE BLUE MUSIC, INC., et al., Plaintiffs,**

v.

**Arthur M. GUTTADAURO, Defendant.**

**Civ. A. No. 84–829–Y.**

United States District Court, D. Massachusetts.

Sept. 10, 1985.

As Amended Sept. 11, 1985.

**23.** *Kern County,* 411 U.S. at 604, 93 S.Ct. at 1749.

Stephen S. Young, Sherburne, Powers & Needham, Boston, Mass., for plaintiffs.

Robert Derian, Westwood, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action for copyright infringement, with jurisdiction based on 28 U.S.C. § 1338(a). The plaintiffs are music publishers and all are members of the American Society of Composers, Authors and Publishers ("ASCAP"). Through ASCAP, the plaintiffs license copyrighted material to individuals and businesses wishing to perform the material in public. The plaintiffs brought this action against the defendant, Arthur Guttadauro, for monetary and injunctive relief based on five counts of alleged infringement.

The undisputed facts show that Guttadauro is the owner and operator of an establishment in Chelsea, Massachusetts, known as King Arthur's. As part of the regularly provided entertainment at King Arthur's, musical compositions are played on a jukebox which is neither coin-operated nor accessible to the public. On the night of September 16–17, 1983, five of the plaintiffs' copyrighted songs were played publicly without authorization from ASCAP.

On the basis of these undisputed facts, the plaintiffs moved for summary judgment. An oral hearing on that motion was held on June 12, 1985, at which time Guttadauro conceded liability. Therefore, the only issue before the court is the appropriate relief to be granted.

### I.

The Copyright Act ("the Act") authorizes the granting of injunctive relief to the prevailing party in an infringement action. 17 U.S.C. § 502(a). An injunction is appropriate where there is a "substantial likelihood of further infringement of plaintiffs' copyrights." *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I. 1982). The Act further provides that the prevailing party may seek damages, in the form of actual damages such as lost revenue, 17 U.S.C. § 504(b), or alternatively, in the form of statutory "in lieu" damages ranging from $250 to $10,000 for each incident of infringement. 17 U.S.C. § 504(c)(1). The plaintiffs in this case seek relief in the form of statutory damages under § 504(c)(1), in addition to an injunction.

The determination of statutory damages under 17 U.S.C. § 504(c)(1) is left solely to the discretion of the trial court, and review of the court's decision on this issue is "extremely narrow." *Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3 (1st Cir.1983); *see Douglas v. Cunningham*, 294 U.S. 207, 210, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935). In *Morley Music*, the Court of Appeals described the trial court's task as follows:

> [A] trial court is not left completely to its own devices in determining damages. Although there need not be the kind of hearing required if factual damages were the issue, there must, we think, be either some hearing or sufficient affidavits to give the trial judge an adequate reference base for his judgment.

725 F.2d at 3 (citations omitted). In this case, the parties have submitted numerous affidavits and supporting documents to guide the Court in its determination of damages. In addition, all parties were represented at an oral hearing on this issue.

Among the factors to be considered in awarding statutory damages are (1) expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues lost by the plaintiffs; and (3) whether the infringement was willful and knowing, or whether it was accidental and innocent. *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1296 (D.R.I.1982); *Boz Skaggs Music v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn.1980).

## II.

The plaintiffs have urged the Court to award $1,000 per infringement, for a total of $5,000 in statutory damages. In support of that request, they have submitted affidavits from ASCAP's East Coast Division Manager, Kenneth Gilman, showing that Guttadauro has been infringing the copyrights of ASCAP members since 1978. According to Gilman, ASCAP representatives have sent at least 18 letters and other correspondence to Guttadauro since 1978, and have also had at least nine telephone conversations and personal visits with him. Despite these numerous contacts, Guttadauro has refused to seek a license for King Arthur's. Moreover, as of May 2, 1985, when Gilman executed his supplemental affidavit, Guttadauro still had not sought a license even though he apparently continued to provide musical entertainment for his patrons. Gilman Supplemental Affidavit ¶¶ 5–11.

The plaintiffs have submitted further evidence that if Guttadauro had been properly licensed from 1978 through July 1, 1985, the estimated license fees which it would have paid to ASCAP amount to $4,735. In addition, ASCAP paid $256.64 to obtain the investigative services performed on September 16, 1983 to gather the evidence of infringement upon which this action is based. Gilman Affidavit of February 7, 1985, ¶¶ 5–7.

Guttadauro does not dispute the basic facts set forth by the plaintiffs. However, he does dispute the contention that he knowingly and deliberately disregarded the plaintiffs' rights under the Act. Guttadauro has submitted affidavits stating that the jukebox at issue in this case is owned by Cigarette Service Company ("Cigarette Service") of Cambridge, Massachusetts, with whom he has a service contract. Cigarette Service owns the records installed in the jukebox and provides general servicing of the machine, including the changing of records. Guttadauro Affidavit ¶¶ 6–7; LaSala Affidavit ¶¶ 3–5. According to an affidavit by the President of Cigarette Service, Charles LaSala, Cigarette Service "pays an annual fee for the jukebox machine." LaSala stated that Guttadauro contacted him "some months back" regarding the jukebox arrangements, at which time he told Guttadauro that Cigarette Service was properly licensed for the jukebox and paid royalty fees for the records provided to King Arthur's. LaSala further informed Guttadauro that ASCAP had not

filed any complaint with Cigarette Service or made any other inquiry about the use of the jukebox or the records supplied to it. LaSala Affidavit ¶¶ 6–7.

Guttadauro relies on his arrangement with Cigarette Service to suggest that he acted in good faith with respect to ASCAP. Although he concedes that ASCAP made numerous attempts to contact him "by letter, by phone and in person," he states that he "refused to do business with ASCAP" because of his contract with Cigarette Service. Guttadauro Affidavit ¶¶ 10–13. He sums up his argument in one paragraph of his affidavit:

> ASCAP and it's [sic] representatives just became one more of these types of annoyances to me. My position throughout has been that Cigarette Service Company is properly licensed and pays a fee directly to ASCAP. I had checked with Cigarette Service Company about this when ASCAP first made contact with me. Once I became assured that Cigarette Service Company was properly licensed I felt no further concern. My position was that I did not have to deal directly with ASCAP. I did not want to purchase records or obtain any licenses from ASCAP separate than from my business dealings with Cigarette Service Company.

Guttadauro Affidavit ¶ 13.

Guttadauro's arrangement with Cigarette Service did not, as a legal matter, affect his responsibility to pay license fees for the playing of ASCAP music. *See* 17 U.S.C. § 116. Guttadauro has implicitly conceded this point by admitting liability. Nonetheless, he argues that he should be held liable only for minimal damages because he was simply mistaken about the applicable law.

This argument would have more force if Guttadauro had not continually "refused to do business with ASCAP" over the course of a seven-year period. Despite exhaustive attempts by ASCAP representatives to persuade him to pay license fees, Guttadauro ignored such requests. There is no evidence that he sought legal advice on this matter before the pending action was filed. Instead, he apparently relied solely on a representation by Cigarette Service that it, as owner of the jukebox, was properly licensed with ASCAP. Without inquiring further as to his own obligations as proprietor, Guttadauro resisted all efforts by ASCAP to reach an amicable understanding.

Under these circumstances, the Court finds that the plaintiffs' request for an award of $1,000 per infringement is just and equitable. In light of the undisputed evidence that the estimated ASCAP license fees over the last seven years, had Guttadauro paid them, would have been $4,735, a total award of $5,000 is more than reasonable. *See Morley Music Co. v. Dick Stacey's Plaza Motel, Inc.*, 725 F.2d 1, 3–4 (1st Cir.1983) (affirming award of $4,800 where estimated total loss of license fees to ASCAP was $4,500).

With respect to the plaintiffs' request for attorneys' fees, it is again left to the sound discretion of the court to determine whether or not attorneys' fees should be awarded, and if so, the amount of such fees. *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1297 (D.R.I.1982); *see* 17 U.S.C. § 505. For the reasons discussed above, this Court concludes that Guttadauro's conduct was sufficiently "blameworthy" to justify an award of attorneys' fees. *See Milene Music, supra*, 551 F.Supp. at 1297. The plaintiffs have requested fees totalling $4,500, and have filed an affidavit of counsel and detailed time records in support of that request. After reviewing the record, the Court finds that, in light of the relative simplicity of this action and its legal framework, a fee in the amount of $2,800 is fair and reasonable. *Id.* at 1298 (fee of $2,250 approved as "eminently fair" in a similar case in 1982). The plaintiffs are further entitled to recover costs. *Id.* at 1297 ("In virtually all reported cases under the Act, costs have been awarded to the victor without discussion.").

*Order*

In accordance with the determinations made above, the plaintiffs' motion for summary judgment is ALLOWED.

It is further ORDERED:

1. That the plaintiffs recover of and from the defendant Arthur M. Guttadauro the sum of $5,000 statutory damages, plus attorneys' fees in the amount of $2,800, for a total recovery of $7,800, plus costs.

2. That the defendant Arthur M. Guttadauro and all persons acting under the direction, control, permission or authority of the defendant are hereby enjoined and restrained from further infringement of the plaintiffs' copyrights in the musical compositions "Heart of Glass," "I Will Survive," "The Other Woman," "Urgent," and "Shame On The Moon."