**HIDEOUT RECORDS AND DISTRIBUTORS, et al.,**
**Plaintiffs,**

**v.**

**EL JAY DEE, INC., et al., Defendants.**

**ANGEL WING MUSIC, et al.,**
**Plaintiffs,**

**v.**

**EL JAY DEE, INC., et al., Defendants.**

**Civ. A. Nos. 81–177 CMW, 81–428 CMW.**

United States District Court,
D. Delaware.

March 19, 1984.

Jane R. Roth, Richards, Layton & Finger, Wilmington, Del., for plaintiffs.

Phillip J. Collins, Wilmington, Del., for defendants.

### MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

This is a consolidated action for copyright infringement arising under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*, in which plaintiffs seek an injunction prohibiting further infringing performances of the musical compositions in question, statutory damages in an amount ranging between $250 and $10,000 for each infringement, and costs, including reasonable attorneys' fees. Presently before the Court is plaintiffs' motion for default judgment or, in the alternative, for summary judgment. For the reasons discussed below, the Court grants plaintiffs' motion for summary judgment.

FACTS

Plaintiffs own the copyrights to seven popular songs [1] which they claim were infringed by the unauthorized public per-

1. The songs are titled: "Betty Lou's Getting Out Tonight", "Tulsa Time", "Fooled Around And Fell In Love", "Roadhouse Blues", "Jailhouse Rock", "She Believes In Me (a/k/a While She Lays)", and "Blues Eyes Crying In The Rain".

formances of the songs on the nights of February 20–21, 1981 and August 9–10, 1981 at defendants' establishment, the Red Lantern Inn in New Castle, Delaware. Each of the plaintiffs is a music publisher and a member of the American Society of Composers, Authors, and Publishers (hereinafter "ASCAP"),[2] and each of the plaintiffs has granted ASCAP a non-exclusive right to license non-dramatic public performances of their copyrighted musical compositions. Defendants are the proprietors of the Red Lantern Inn, an establishment providing live entertainment in New Castle, Delaware. Defendant El Jay Dee, Inc. owns and operates the Red Lantern Inn, with defendant Frank Nelkin, Jr. acting as President, and defendant Hiawanna Nelkin acting as Vice-President and Secretary.[3]

The basis for plaintiffs' motion for default judgment is the failure of defendant Hiawanna Nelkin to appear for one of her noticed depositions. This deposition was scheduled to occur on December 20, 1982.[4] *See* Appendix B to Plaintiffs' Opening Brief (Dkt. No. 47). Mrs. Nelkin contends that she was never given notice that a deposition had been scheduled for December 20, 1982 and that her failure to appear was not wilful but rather due to circumstances beyond her control. *See* Exhibit B to Defendants' Answering Brief (Dkt. No. 51). Plaintiffs contend that Mrs. Nelkin failed to appear even though she was repeatedly notified of it by her attorney. The plaintiffs conclude that her failure to appear constitutes a wilful disregard of her obligations sufficient to justify entry of default judgment. *See* Appendix A to

Plaintiffs' Reply Brief and Plaintiffs' Reply Brief at 3–5 (Dkt. No. 57).

As an alternative to entry of default judgment, plaintiffs seek entry of summary judgment, alleging that they have offered uncontradicted proof of both copyright ownership and infringing performance. Plaintiffs have submitted copies of copyright registration certificates and other documents to prove ownership and defendants do not dispute that plaintiffs are the owners of the copyrights to the musical compositions at issue in this litigation. *See* Affidavit of Anne Sullivan and accompanying Exhibits (Dkt. No. 48). However, defendants do dispute plaintiffs' affirmative proof of infringing performance, alleging that there are material issues of fact concerning whether the songs in issue were actually performed at the Red Lantern Inn on the nights in question. *See* Defendants' Answering Brief at 3–4 (Dkt. No. 51).

Plaintiffs have submitted the affidavits of four individuals as proof that the songs in issue were performed at the Red Lantern Inn on the nights of February 20–21, 1981 and August 9–10, 1981. The affidavits of Donald Hood and Raymond Verna state that the band playing at the Red Lantern Inn on the evening of February 20–21, 1981 performed five songs at issue in this litigation, titled "Betty Lou's Getting Out Tonight", "Tulsa Time", "Fooled Around And Fell In Love", "Roadhouse Blues", and "Jailhouse Rock". (Dkt. Nos. 44, 59, 61). The affidavits of Steven Shore and Michael Suchodolski state that the band playing at the Red Lantern Inn on the evening of August 9–10, 1981 performed

---

**2.** ASCAP is a performing rights licensing organization which, on behalf of its members, licenses thousands of radio and television stations, restaurants, nightclubs, hotels, taverns and other establishments whose owners desire to perform publicly copyrighted musical compositions in the ASCAP repertory.

**3.** Defendants Frank and Hiawanna Nelkin have admitted that they had "primary responsibility for the control, operation and maintenance of the affairs of [El Jay Dee, Inc.]", and that "the acts hereinafter complained of were done with their active assistance, cooperation, acquies-

cence and procurement." *See* Complaint ¶ 5 (Dkt. No. 1); Answer ¶ 5 (Dkt. No. 5).

**4.** Mrs. Nelkin's deposition had been noticed on six prior occasions. *See* Appendix C to Plaintiffs' Opening Brief (Dkt. No. 47). These six prior occasions on which Mrs. Nelkin failed to appear are not in issue since these depositions were put over by agreement of counsel. *See* Plaintiffs' Opening Brief at 3 (Dkt. No. 47). Her failure to appear at the first six depositions was apparently due to her poor health. *See* Exhibits A and B to Defendant's Answering Brief (Dkt. No. 51).

three songs at issue in this litigation, titled "She Believes In Me (a/k/a While She Lays)", "Blue Eyes Crying In The Rain", and "Tulsa Time". (Dkt. Nos. 58, 60).

Defendants have submitted no affidavits to refute the affidavits of Shore and Suchodolski on the issue of performance of the three songs at issue on the night of August 9–10, 1981. Defendants have, however, submitted one affidavit that they allege refutes the affidavits of Hood and Verna on the issue of performance of the five songs at issue on the night of February 20–21, 1981. That affidavit, filed by Mrs. Nelkin, states in pertinent part:

4. Although I had advertised that the band, Sheer Panic, would appear that night, Sheer Panic was not able to attend the Red Lantern Inn on February 20–21, 1981. As their replacement, my calendar shows and I remember that, the band Southwind performed on that night. The statement that Sheer Panic appeared at the Red Lantern Inn on February 20–21, 1981 in the notes attached to the affidavit of David Hood, dated May 27, 1983, is not correct. I do not keep notes of every song bands played at the Red Lantern Inn, but I do not recall hearing Southwind play any of the five songs that Donald Hood says in his affidavit and notes that Southwind played. As I recall, Southwind did not play the kind of music represented by the five (5) songs in Donald Hood's affidavit. I have tried to locate Southwind or its members or agent but have been unsuccessful. Southwind disbanded long ago. I have

examined and read Donald Hood's affidavit.

See Exhibit B to Defendants' Answering Brief (Dkt. No. 51). Defendants conclude that Mrs. Nelkin's affidavit is sufficient to raise a genuine issue of fact precluding summary judgment.

Defendants raise two other matters relevant to plaintiffs' motion for summary judgment. First, defendants contend that summary judgment against the individual defendants is inappropriate since they are shielded from personal liability by 8 *Del.C.* § 325. See Defendants' Answering Brief at 3–4 (Dkt. No. 51). Second, defendants contend that, while they had no ASCAP license at the time of the alleged performances,[5] their failure to renew the license and pay the license fees was based on their attorney's advice that ASCAP's licensing scheme violated the antitrust laws. See Exhibit B to Defendants' Answering Brief (Dkt. No. 51). Defendants conclude that plaintiffs' claims for injunctive relief, statutory damages, costs and reasonable attorneys' fees should be denied.

## DISCUSSION

The Court finds that plaintiffs are entitled to summary judgment and grants plaintiffs' request for injunctive relief, statutory damages, costs and reasonable attorneys' fees.[6] In so holding, the Court concludes that there are no genuine issues of material fact remaining to be tried and that defendants' other contentions relating to plaintiffs' motion for summary judgment are without merit.

---

**5.** ASCAP has, since May 1970, attempted to secure a license agreement with the owners of the Red Lantern Inn. When ASCAP's attempts proved unsuccessful, they sued and obtained a judgment for infringements of their copyrighted musical compositions which occurred in 1977 and 1978. *See Milene Music, Inc., et al. v. El Jay Dee, Inc.,* C.A. 78–167 (D.Del.) and *Swallow Turn Music, et al. v. El Jay Dee, Inc.,* C.A. No. 78–553 (D.Del.). This judgment was satisfied in February, 1981. In the course of the litigation, defendants entered into a license agreement for the Red Lantern Inn commencing on April 1, 1979. This agreement was terminated on Janu-

ary 11, 1981 for default in payment of fees. *See* Affidavit of William Fielder (Dkt. No. 45).

**6.** Since this is a summary judgment motion, the Court has resolved any doubt as to the existence of genuine issues of material fact against the moving party and has resolved the reasonable inferences from the facts in favor of the party against whom judgment may be entered. *See, e.g., Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). The Court finds it unnecessary to address plaintiffs' claim that a default judgment should be entered since the Court finds that there are no genuine issues of material fact precluding summary judgment.

In order to prove that their copyrights have been infringed, plaintiffs bear the burden of demonstrating five elements:

1. the originality and authorship of the songs allegedly infringed;

2. . compliance with the formalities of the Copyright Act;

3. that plaintiffs are proprietors of the copyrights;

4. that the songs were performed as alleged; and

5. that such performance was without proper authorization.

*See, e.g., Broadcast Music, Inc. v. Moor-Law, Inc.,* 484 F.Supp. 357, 362 (D.Del. 1980). In this case, there is no genuine issue of material fact relating to plaintiffs' evidence of originality and authorship, compliance with the statutory formalities, and ownership of the works allegedly infringed. Plaintiffs have filed copies of the copyright registration certificates and copies of all relevant assignments relating to the seven songs at issue here. *See* Affidavit of Anne Sullivan and accompanying exhibits (Dkt. No. 48). These documents constitute prima facie evidence of the first three elements required to be established by plaintiffs, *see Broadcast Music, Inc. v. Moor-Law, Inc., supra,* at 362–63, and defendants do not dispute plaintiffs' contentions relating to these elements.

Defendants, however, do dispute plaintiffs' contentions relating to the last two elements required to be proved in a claim for copyright infringement. Apparently, defendants contend that their reliance on their attorney's erroneous advice that ASCAP's licensing scheme violated the antitrust laws justified their failure to renew the license and pay the license fees. The Court finds that this contention is meritless. In the absence of permission from the copyright owner, performances of protected musical compositions are infringements of copyright. This is so even if defendants' failure to renew the license and pay the license fees was based on their attorney's mistaken advice as to the legal consequences of their actions and even if defendants believed in good faith that they were not infringing plaintiffs' copyrights. *See, e.g., Universal City Studios v. Sony Corp. of America,* 659 F.2d 963, 975 (9th Cir.1981), *rev'd on other grounds,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) ("a defendant's mistake as to the legal consequences of his actions does not constitute an excuse for infringement"); *Pye v. Mitchell,* 574 F.2d 476, 481 (9th Cir.1978) (even if defendant believes in good faith that he is not infringing plaintiff's copyright, he may be found liable). Therefore, defendants' contentions relating to their failure to renew their license prior to the time of the alleged infringing performances provide no excuse for their failure to obtain proper authorization and cannot prevent the entry of summary judgment if the alleged infringing performances occurred.

Moreover, if the alleged infringing performances occurred, defendants' contentions that the individual defendants are shielded from personal liability by 8 *Del.C.* § 325 cannot prevent the entry of summary judgment. 8 *Del.C.* § 325 provides:

(a) When the officers, directors, or stockholders of any corporation shall be liable by the provisions of this chapter to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action, at law or in equity, against any 1 or more of them, and the complaint shall state the claim against the corporation, and the ground on which plaintiff expects to charge the defendants personally.

(b) No suit shall be brought against any officer, director, or stockholder for any debt of a corporation of which he is an officer, director, or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied.

This statute is plainly irrelevant since this is a copyright infringement action and not a suit against an officer, director or stockholder for the debts of a corporation. In cases of copyright infringement, an individual defendant's personal liability depends, *inter alia,* on whether he or she is the

dominant influence in a corporation and has the capacity to control the acts of the corporation. If so, then he or she is jointly liable with the corporation for copyright infringement. *See Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307–09 (2d Cir.1963); *Milene Music, Inc. v. Gotauco*, 551 F.Supp. 1288, 1295 (D.R.I.1982); *Boz Scaggs Music, et al. v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn.1980); *Warner Bros., Inc., et al. v. O'Keefe*, 468 F.Supp. 16, 20 (S.D.Iowa 1978). In this case, the individual defendants admit that they are the President and Vice President/Secretary of the corporate defendant and that they had "primary responsibility for the control, management, operation and maintenance of affairs of said corporation." *See* Answer ¶ 5 (Dkt. No. 5). Therefore, the Court holds that they are jointly liable with the corporate defendant for any alleged infringements that occurred.

■ Thus, the only issue that could preclude summary judgment in this case is the issue of whether any alleged infringing performances occurred. However, Mrs. Nelkin's affidavit, which is the only affidavit relied on by defendants to dispute plaintiffs' proof of infringing performance, does not contradict or refute plaintiffs' evidence on this issue. As numerous courts have held, if the facts stated in the affidavits of the moving party are not contradicted by facts stated in the affidavits of the party opposing the motion for summary judgment, they should be accepted as true. *See, e.g., Morrison v. Walker*, 404 F.2d 1046, 1048–49 (9th Cir.1968); *Anthony v. White*, 376 F.Supp. 567, 574 (D.Del.1974). In this case, Mrs. Nelkin's affidavit simply

states that she cannot remember hearing the band that performed on the night of February 20–21, 1981 play any of the five songs that the affidavit of Donald Hood says were performed. It also states that she recalls that the band that performed on the night of February 20–21, 1981 did not play the kind of music represented by the five songs in Hood's affidavit. *See* Exhibit B to Defendants' Answering Brief (Dkt. No. 51). These allegations are not sufficient to contradict or refute the affidavits of Donald Hood and Raymond Verna.

■ First, Mrs. Nelkin's statement that she cannot remember hearing the songs played does not place in dispute the statements of Hood and Verna that the songs were in fact played since an affiant's failure to remember an event is not a specific denial that the event occurred. *See, e.g., Lemelson v. The Bendix Corp., et al.*, C.A. No. 82–308, Slip Op. at 3, fn. 2 (D.Del., January 23, 1984). Second, Mrs. Nelkin's statement that, as she recalls, the band performing on the night of February 20–21, 1981 did not play the kind of music represented by the five songs in Hood's affidavit does not raise a triable issue since conclusory statements, general denials and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.[7] *See Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir.1972). Finally, Mrs. Nelkin's statements do not raise a triable issue of fact since they are essentially addressed to the issues of what band played that night[8] and not to the critical issue of whether the five songs in issue were performed. Thus, the Court finds that there is no genuine issue

7. Mrs. Nelkin's affidavit provides the Court with no basis for concluding that she had personal knowledge of the kind of music typically played by the band that performed on the night of February 20–21, 1981. *See, e.g., Doza v. American National Ins. Co.*, 314 F.2d 230, 232 (8th Cir.1963) (affidavit must not only be made on the personal knowledge of affiant, but must show that the affiant possesses the knowledge asserted). Nor does it specifically deny that the five songs were played. It simply states a general conclusion about the type of music that this particular band typically played. Therefore, the Court cannot conclude that the affidavit has

succeeded in setting forth "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

8. The Nelkin affidavit states that the group "Southwind" played that night; the original Hood affidavit stated that the group "Sheer Panic" performed. *See* Affidavit of Donald Hood (Dkt. No. 44). Hood's supplemental affidavit states that regardless of the identity of the band, the five songs were in fact played. *See* Affidavit of Donald Hood (Dkt. No. 61).

of material fact regarding the infringing performance of the five songs played on the night of February 20–21, 1981.

The Court also finds that there is no genuine issue of material fact regarding the infringing performance of the three songs played on the night of August 9–10, 1981. Defendants have offered no evidence, by affidavit or otherwise, to refute the affidavits of Steven Shore and Michael Suchodolski (Dkt. Nos. 58, 60). These affidavits establish the performance of "She Believes In Me (a/k/a While She Lays)", "Blue Eyes Crying In The Rain", and "Tulsa Time" at the Red Lantern Inn on the night of August 9–10, 1981. Defendants have had over one month to submit counteraffidavits and have not done so. Therefore, the Court finds that summary judgment is appropriate since plaintiffs have affirmatively established the five elements required to find liability for copyright infringement and defendants have raised no genuine issues of material fact concerning plaintiffs' evidence.

Having prevailed on their motion for summary judgment, plaintiffs may be entitled to injunctive relief, statutory damages, costs and reasonable attorneys' fees. *See* 17 U.S.C. § 502(a) (court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of copyright."); 17 U.S.C. § 504(c) (plaintiffs may elect to recover statutory damages in lieu of actual damages and profits; statutory damages to range, in the court's discretion, from $250 to $10,000, and up to $50,000 if infringement is wilful); 17 U.S.C. § 505 (court, in its discretion, may award attorneys' fees and costs to the prevailing party). In this case, plaintiffs have elected to recover statutory damages and have suggested that $1000 for each of the eight infringing performances is an appropriate amount of statutory damages. *See* Plaintiffs' Opening Brief at 15 (Dkt. No. 47). Defendants suggest that, if they are liable, only the stautory minimum of $250 should be awarded.

In determining statutory damages under 17 U.S.C. § 504(c)(1), courts have wide discretion to set damages within the statutory limits and awards of damages for more than the statutory minimum are frequent. *See, e.g., Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288 (D.R.I.1982) ($625 per infringement plus costs and attorneys' fees); *Broadcast Music, Inc. v. Tadych,* 203 U.S.P.Q. 506 (E.D.Wis.1979) ($1,000 per infringement); *Jerry DeNicola, Inc. v. Genesco, Pakula & Co.,* 188 U.S. P.Q. 306 (S.D.N.Y.1975) ($5,000 per infringement). Two factors often considered by courts in determining an amount appropriate to vindicate statutory policy are the award's deterrent value and the wilful nature of defendants' infringement. *See, e.g., Milene Music, Inc. v. Gotauco, supra,* at 1296–97. In this case, the evidence shows that defendants have deliberately violated the copyright laws for a substantial period of time despite ASCAP's persistent attempts to induce defendants to acquire and maintain a license and despite a previous loss in copyright litigation. *See* Affidavit of William Fielder (Dkt. No. 45). Since the evidence indicates that defendants deliberately violated the copyright laws, and since defendants' previous defeat in a copyright infringement action has not deterred them from further violations of the law, the Court finds that an award of $500 for each of the eight infringing performances is appropriate.

In addition, the Court will issue an injunction prohibiting defendants from any further unlawful infringements of the musical compositions at issue in this litigation and will award plaintiffs costs and reasonable attorneys' fees. *See, e.g., Milene Music, Inc. v. Gotauco, supra,* at 1297–98 (costs routinely awarded to victor in copyright cases and attorneys' fees particularly appropriate in case of deliberate infringement). Defendants will be given an opportunity to dispute the reasonableness of the fee award requested by plaintiffs' counsel.

An Order will be entered consistent with this Opinion.