**FOREVERENDEAVOR MUSIC, INC., et al., Plaintiffs,**

**v.**

**S.M.B., INC., and Allan R. Hemmat, Defendants.**

**No. C87–859R.**

United States District Court, W.D. Washington, at Seattle.

May 25, 1988.

Order Awarding Attorneys' Fees and Costs July 27, 1988.

---

**1.** In fact, the court is not aware of any case where a violation of Section 2518(1)(e) has been held to require suppression.

David N. Bruce, Perkins Coie, Seattle, Wash., for plaintiffs.

Michael A. Clarke, Everett, Wash., for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on a motion by plaintiffs for summary judgment. Having reviewed the motion together with all documents filed in support and in opposition, the court finds and rules as follows:

Plaintiffs, all owners of copyrights in musical compositions, filed suit against defendants S.M.B., Inc. ("SMB"), and Allan R. Hemmat ("Hemmat") for infringing their copyrights in violation of Title 17, U.S.C. Plaintiffs now move for summary judgment on the grounds that no genuine issues of material fact remain to be decided.

Plaintiffs must establish five elements in order to prove copyright infringement: (1) the originality and authorship of the works involved; (2) compliance with the formalities of federal copyright law; (3) rightful proprietorship of the copyrights at issue; (4) that the copyrighted works were performed publicly for profit; and (5) lack of authorization by the owner or owner's representative for the alleged infringer to

publicly perform the works. *Merrill v. Country Stores, Inc.*, 669 F.Supp. 1164, 1168 (D.N.H.1987).

In his response, defendant Hemmat does not dispute that songs composed and properly copyrighted by plaintiffs were played publicly for profit without permission or license at the Casbah Restaurant and Lounge ("Casbah") on the night of February 13, 1987. Hemmat is president and a major stockholder of SMB, which owns the Casbah.[1]

Hemmat does argue, however, that he should not be held liable for the violations for several reasons. First, he contends that his actions were not deliberate and wilful. Hemmat insists that plaintiffs refused to explain the source of their authority or to provide a list of copyrighted songs. Affidavit of Allen R. Hemmat in Response to Plaintiffs' Motion for Summary Judgment, pp. 1–2.

█ The record in the case does not bear out Hemmat's contentions. Appended to the Affidavit of Terrance M. Sullivan in Support of Plaintiff's Motion for Summary Judgment is evidence of plaintiffs' extensive efforts to cooperate with Hemmat. Sullivan is the Seattle District Office Manager for the American Society of Composers, Authors and Publishers ("ASCAP"), a voluntary membership association which protects its members' copyrights from unlicensed public performances. All of the plaintiffs are members of ASCAP.

The ASCAP business records submitted by Sullivan include written reports of contacts between ASCAP and Hemmat ranging over three years. In February of 1984, ASCAP first wrote to Hemmat asking him to obtain a license. In July of 1984, Hemmat signed a license agreement and paid the first quarter fee of $145.25. Because Hemmet failed to make any additional payments, his license was terminated in July of 1986. The reports indicate that ASCAP,

far from being uncooperative, sought to work out a payment schedule with Hemmat to alleviate his financial problems. As for Hemmat's allegation that ASCAP refused to provide a copyrighted song list, Sullivan did tell Hemmat how to find out whether a particular song was on the ASCAP list. The court finds that sufficient. *Compare Cass County Music Co. v. Vineyard Country Golf Corp.*, 605 F.Supp. 1536, 1537–38 (D.Mass.1985).

In short, the court rejects Hemmat's defense that ASCAP refused to respond to his legitimate requests. On the contrary, the record establishes ASCAP's considerable patience in dealing with Hemmat. If Hemmat was not convinced that ASCAP had the right to enforce copyright laws, he had ample opportunity to seek legal advice.[2] In any event, his doubts about ASCAP do not absolve him from liability for infringing copyrights.

Second, Hemmat argues that he cannot be held individually liable for the acts of SMB because SMB was the owner and operator of the Casbah, he had no actual knowledge of which songs were played, and he did not have the capacity or opportunity to control the songs played at the Casbah.

The record reveals that Hemmat is president and manager of SMB. He and members of his immediate family own all of the shares in SMB. In his deposition, Hematt admitted that he was personally responsible for the day-to-day management of the Casbah, and that 99 percent of the time he called the agent who hired the bands. In addition, Hemmat was the only person with power to sign checks on behalf of SMB.

█ Given this evidence, plaintiffs argue that Hemmat can be held individually liable for the violations occurring at the Casbah. The court agrees. As stated in *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F.Supp. 629, 633 (D.N.H.1986), "[i]t is well established that a corporate officer will be

---

**1.** Defendant SMB did not file a response to plaintiffs' motion. Therefore, the court grants the motion against SMB as unopposed.

**2.** Although Hemmat argues that his refusal to pay license fees was based on ASCAP's refusal to

provide information, the record strongly suggests that Hemmat's financial problems were the real cause of his failure to comply with his obligations under the license agreement.

liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." *See also Van Halen Music v. Palmer*, 626 F.Supp. 1163, 1166–67 (W.D.Ark.1986); *Blendingwell Music, Inc. v. Moor–Law, Inc.*, 612 F.Supp. 474, 481–82 (D.Del.1985); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 913–14 (D.Conn.1980). There is no question in this case that Hemmat was the dominant influence in SMB and had the power to control its actions.

Based on the above evidence and conclusions, plaintiffs are entitled to injunctive relief prohibiting defendants from committing further copyright infringements. Plaintiffs also request an award of statutory damages in the amount of $2,000 per infringement together with an award of costs including attorney's fees.

Pursuant to 17 U.S.C. § 504, the court can award statutory damages of from $250 to $10,000 per infringement. In this case, the court concludes that $1,000 per infringement is an appropriate amount. Defendants SMB and Hemmat were made aware of the obligation to obtain a license before playing copyrighted songs and deliberately chose to ignore that obligation for a considerable period of time while continuing to play copyrighted music. The court further finds that defendants are liable for plaintiffs' costs including attorney's fees. *Compare Boz Scaggs Music, supra* at 914–15.

In conclusion, plaintiffs' motion for summary judgment is GRANTED. Defendants must pay $1,000 per infringement together with the costs and attorney's fees plaintiffs have incurred in prosecuting this case. Plaintiffs shall submit an affidavit setting forth the reasonable and necessary costs and attorney's fees expended.

IT IS SO ORDERED.

The Clerk of the Court is directed to send copies of this Order to counsel of record.

## ORDER AWARDING ATTORNEYS' FEES AND COSTS

This matter comes before the court pursuant to this court's Order awarding plaintiffs the attorneys' fees and costs they incurred in prosecuting this action. Having reviewed plaintiffs' affidavit together with defendants' opposing affidavits, and being fully advised, the court finds and rules as follows:

Plaintiffs request an award of $10,372.00 in attorneys' fees and $2,366.80 in costs for a total of $12,738.80. Defendants object that the attorneys' fees are too high. They point out that the case was resolved on summary judgment and that the plaintiffs only recovered $6,000 in damages.

After examining the affidavits submitted by both parties and reviewing the file in this case, the court concludes that the amount of attorneys' fees requested by plaintiffs is justified. As the court stated in its Order Granting Summary Judgment at p. 5, defendants' infringements of the copyright laws were deliberate. Despite plaintiffs' efforts over a number of years to negotiate a settlement prior to filing suit, defendants failed to cooperate, thus forcing the matter into litigation.

During the course of the lawsuit, defendants' recalcitrance required plaintiffs to get court orders mandating production of documents and defendant Allan Hemmat's appearance at a scheduled deposition. If the legal fees seem high, defendants have themselves to blame, not only for failing to determine their responsibilities under the copyright laws before suit was filed against them, but also for refusing to participate in the discovery process until they were threatened with court sanctions.

Plaintiffs are accordingly awarded $12,738.80 in attorneys' fees and costs.

IT IT SO ORDERED.

The Clerk of the Court is directed to send copies of this Order to counsel of record.

DATED at Seattle, Washington this 27th day of July, 1988.